## HUNTINGTON NAT'L BANK·v FULTON

Ohio Appeals, 3rd Dist, Allen Co

No 647.   Decided·Oct 15, 1934

Wheeler, Bentley, Neville & Cory, Lima, for plaintiff.

John W. Bricker, Attorney General, Columbus, and John L. Cable, Lima, special counsel, for defendants.

714

## OPINION

By GUERNSEY, J.

1. There is no averment in the pleadings that the subject matter of this action is res judicata or that the Common Pleas Court or this court does not have jurisdiction of the subject matter, and no question as to jurisdiction was raised on the trial of the cause in the Common Pleas Court. The jurisdiction of the Common Pleas Court and of this court over the subject matter is now objected to for the first time, in the brief of defendant, upon the sole ground that as the Probate Court had jurisdiction of the settlement of decedent's estate and of the accounting between the trustees, that such jurisdiction is exclusive, and that the Common Pleas Court did not have original jurisdiction of the subject matter of this action and consequently this court, on appeal, had no jurisdiction of the subject matter, and this ground will be the only ground considered; and except for this ground of objection, the parties will be considered as having waived any objection to, and acquiesced in, the jurisdiction of this court on appeal, over the subject matter of the action.

The final account filed by The Lima First American Trust Company as trustee, as set forth in the averments of the petition which, no evidence having been developed to the contrary are by stipulation of the parties admitted to be true, shows that it failed and refused to pay over and distribute to the plaintiff as successor trustee, the sum of $2580.94 constituting a part of the assets and property of the trust estate, and also shows the specific items of deposit in the banking department of the trustee making up said amount. The order of the

Probate Court directed said trustee to account for and turn over to plaintiff as such successor trustee, all the assets and property belonging to said trust estate. This order and the identification in the account filed by the original trustee, of the specific items of assets to be turned over, had the effect, upon the successor trustee accepting the appointment and qualifying as trustee, of vesting in the successor trustee the title and right of possession to the specific items, and the successor trustee having the title and right of possession, is entitled to enforce all legal and equitable rights as owner with reference to such items without any further adjudication by the Probate Court with reference thereto.

It was not within the jurisdiction of the Probate Court to engraft or enforce trusts or liens on the funds of the trust company, as the Probate Court is not vested with general equitable jurisdiction authorizing it to engraft or enforce such trusts or liens, and the Probate Court did not have and could not acquire jurisdiction over the treasurer of state, the custodian of one of the funds upon which a lien is sought to be engrafted; nor was it within the jurisdiction of the Probate Court to allow such claim as a preferred claim against the assets of the trust company in the possession of the superintendent of banks for the purpose of liquidation, as the allowance of claims against a bank in the process of liquidation is governed exclusively by the provisions of §710-1 et seq, GC, which vests such jurisdiction in the superintendent, of banks and the Common Pleas Court of the county where the bank in process of liquidation is situated. The Common Pleas Court has jurisdiction both in the matter of the allowance of claims against banks in process of liquidation, as well as general equitable jurisdiction and is the only court in which the relief sought in this action could be granted, so the Common Pleas Court had jurisdiction of the subject matter, and this court, on appeal from the Common Pleas Court, has jurisdiction of the subject matter.

2. It is contended by the defendant superintendent of banks, that by reason of the provisions of §710-165 GC, "moneys pending distribution or investment may be treated as a deposit in the trust department, or may be deposited in other departments of the bank, subject in other respects to the provisions of law relating to deposit of trust funds by trustees and others", the various deposits made by the trustee of the trust funds in the commercial and savings departments of the trust company were made under authority of law. The defendant apparently overlooks the provisions of §710-164, GC, which reads as follows:

"Investment of money and property held in trust.—In the management of money and property held by it as trustee, such trust company may invest such money and property in a general trust fund of the trust company. But it shall be competent for the authority making the appointment to direct whether such money and property shall be held separately or any part thereof invested in a general trust fund of the trust company. The trust company always shall follow and be entirely governed by the directions contained in any will or instrument under which it acts."

It will be noted that this section expressly provides that it shall be competent for the authority making the appointment (of a trustee) to direct whether such property and money shall be held separately or any part thereof invested in the general trust funds of the trust company, and that the trust company always shall follow and be entirely governed by the directions contained in any will or instrument under which it acts. Under the provisions of this section, Seth S. Wheeler in his last will and testament under which he appointed said trustee, had full authority to direct, as he did direct, that said trustee should keep said estate separate and apart from any other property or moneys owned or held by it, and the trust company under the provisions of this section was required to follow and be entirely governed by the directions contained in the will. As the trust company, in the will was prohibited from making such deposits, such deposits were wholly unauthorized.

3. The deposits made by the banking corporation trustee, of the trust funds in the commercial and savings departments of the bank conducted by it, being wholly unauthorized, such acts on its part constituted a violation of its duty, and a misapplication of funds, and the plaintiff as successor trustee may, upon tracing said deposit funds either in their original form or into specific property which passed to the superintendent of banks, have a trust engrafted thereon.

Terre Haute Trust Company v Scott, Appellate Court of Indiana, 181 Northeastern, 369.

It must be noted, however, that the mere misapplication of a trust fund does not create a general lien on the tort-feasor's estate, but to entitle the owner to recover

such fund from a receiver or a trustee, it must be traced either in its original form or into specific property which passed to the receiver.

Smith v Fuller, 86 Oh St 57.

Board of Commissioners of Crawford County v Strawn, 157 Federal Reporter, 49.

The case of Jones et v Killbreath, 49 Oh St 401, is cited as announcing a contrary rule, but upon examination of the statement of facts in that case it will be found that the proceeds of the draft which the bank held for collection and for the amount of which recovery was had against the assignee of the bank, were applied by the assignee of the bank after he came into possession of the assets of the bank, to the payment of the claim of the creditor of the bank which had attached the draft. As the assignee of the bank and the creditors of the bank who were the beneficiaries of the trust created by the assignment received the full benefit of the proceeds of the draft in this manner, such proceeds served to augment the trust fund in the hands of the assignee, and the proceeds being identifiable as having been used by the assignee to pay a charge against the trust fund, the assignee was properly required to reimburse the owner of the draft for such proceeds out of the trust fund in his hands. The case did not involve the tracing of a trust on the moneys in the vaults of the bank coming into the hands of the assignee, but simply involved the tracing of a specific trust fund which the assignee appropriated for the use of the bank after taking possession of its assets, and the decision is in conformity with the rule above set forth.

The blending of the trust money with the money of the trustee was suffered at one time to defeat the owner's title and compel him to stand as a mere unsecured creditor. This was upon the idea that money was not earmarked, and, therefore, could not be recovered in specie. But the later cases have met this difficulty in the case of blended moneys in a bank account, from which there have been drawings from time to time, by the fiction that the sums thus drawn out were from the moneys which the tort-feasor had a right to expend in his own business, and that the balance which remained included the trust fund which he had no right to use.

Smith v Fuller, supra, 86 Oh St 57.

Knockball v Hallett, 13 Ch. Div. 696, 726, et seq., 104 U. S. 54.

Smith v Mottley, 150 Federal, 266.

But as this is a mere presumption it will not stand against evidence. It is,

therefore, a part of the rule applicable to following misappropriated moneys into a bank account that, if at any time during currency of the mingled account the drawings out had left a balance less than the trust money, the trust money must be regarded as dissipated except as to this balance, the sums subsequently added to the account from other sources not being attributed to the trust fund. Smith v Fuller, supra. And if it be shown at all times from the making of the deposit to the time of the assignment by the bank, there was in its vaults, money of the amount and value equal to the amount so deposited, a court of equity may engraft a trust upon such money, and the trustee will become a preferred creditor to the amount of such deposit.

It will further be noted that under the rules adopted in the cases above cited, and particularly in the case of Commissioners v Strawn, supra, that in order to engraft a trust for trust funds so deposited, the deposit must be made in money and the money coming into the hands of the person in charge of the liquidation of such insolvent bank must include in its mass, the money so deposited, commingled with other moneys of said bank, and as only property of the same kind can be commingled or blended, money can only be commingled with money, and where such deposit is made by way of credit on the books of the bank rather than the actual deposit of money, such deposit will not entitle the holder thereof to engraft any trust upon any part of the moneys coming into the hands of the liquidating officer of such bank. It will also be noted that under the decisions mentioned, the deposits, in order to engraft a trust, must augment the assets of the bank coming into the hands of the liquidating officer.

In considering the application of the rules mentioned, to the facts in the case at bar Item Two of the items of deposit hereinbefore mentioned, will be first considered. This item is an item of deposit credit for the proceeds of certain bonds belonging to the trust estate, sold by the trustee. The evidence shows that the proceeds of these bonds never entered the vaults of the trust company, as immediately following the sale of the same The Union Trust Company applied the proceeds as a credit on the indebtedness of The Lima First American Trust Company to it, and The Lima First American Trust Company, immediately following, acquiesced in said application and gave a deposit credit on the books of its banking department to the

trust estate for the amount thereof. The evidence fails to show as to whether the proceeds of the bonds were by way of cash or bank credit, but whether by way of bank credit or cash, the evidence affirmatively shows that the actual proceeds were neither commingled nor blended with the moneys in the vaults of the bank; neither was there any augmentation of the assets of the bank, as the proceeds were used to decrease the liabilities of the bank rather than to increase its assets; and neither were such proceeds included in the moneys in the vaults of said bank coming into the possession of the liquidating officer, as at the time the liquidating officer took possession of said assets the only thing representing the proceeds of the sale of the bonds was the debt shown by way of deposit credited to the trustee on the books of said bank for the proceeds thereof; and there was no corpus or res at the time the liquidating officer took possession of said bank for the purpose of liquidation, upon which a trust or lien for the payment of said deposit could operate.

**Fulton, Superintendent of Banks v Gardiner, 127 Oh St 77.**

Plaintiff therefore is not entitled to any trust, lien or claim for preference, on the cash in the vaults of the bank at the time the liquidating officer took possession of the same, on account of said item of deposit.

With reference to the item of deposit hereinbefore referred to as the first item of deposit, amounting to the sum of $249.27, on deposit in a "restricted balance" account of the trust department of said bank, in the commercial department thereof, the evidence shows that said deposit was made from the income cash account of said estate. And with reference to Item Three the evidence shows it was made from uninvested funds of the estate. In neither case is there any evidence tending to show that the deposits consisted of money, that is, coin or paper money, in contradistinction to checks, drafts, interest coupons or other credits. As a trust can be impressed on money in the vaults of an insolvent bank coming into the possession of the liquidating officer, only where money deposited is commingled with the money of the bank in the vaults of the bank, the burden is on the plaintiff to establish that the funds deposited were money and not credits, and as there is no evidence tending to prove that the deposits consisted of money, the plaintiff is not entitled to impress a lien on any of the money in the vaults of the bank coming into the possession of the

liquidating officer. There can be no tracing without a starting point and unless the original deposit is identified as money, there can be no starting point.

4. Before considering the question as to whether the plaintiff is entitled to a lien for the payment of said deposits upon the fund deposited by the trust company with the treasurer of state, it is necessary to determine whether the superintendent of banks is entitled to take possession of and administer the fund deposited by the trust company with the treasurer of state pursuant to the provisions of §710-150, GC, as a part of the assets of said banking corporation, and as to the law governing the administration of the same.

The provisions of the statutes with reference to the deposit by a trust company, of the fund with the treasurer of state, is contained in §710-150 GC, which reads as follows:

"No trust company, or corporation, either foreign or domestic, doing a trust business shall accept trusts which may be vested in, transferred or committed to it by a person, firm, association, corporation, court or other authority, of property within this state, until its paid-in capital is at least one hundred thousand dollars, and until such corporation has deposited with the treasurer of state in cash the sum of one hundred thousand dollars, except that the full amount of such deposit by such corporation may be in bonds, or other interest-bearing obligations of the United States or those for the payment of principal and interest of which the faith of the United States is pledged, including bonds of the District of Columbia; farm loan bonds, issued under the provisions of the act of Congress known as the federal farm loan act, approved July 17, 1916, and amendment thereto; * * * bonds of this state or any municipality or county therein, or any first mortgage bonds of any railroad corporation that for five years last past has earned at least five per cent net on its issued and outstanding capital stock, which securities and the sufficiency thereof shall be approved by the superintendent of banks. From time to time said treasurer shall with the approval of the superintendent of banks, permit withdrawals of such securities or cash, or part thereof, upon deposit with him and approval of the superintendent of banks, of cash or other securities of the kind heretofore named, so as to maintain the value of such deposits as herein provided, and so long as it continues solvent

he shall permit it to collect the interest on its securities so deposited."

The purpose of such deposit is set forth in §710-161 GC, which reads as follows:

"The capital stock of such trust company, with the liabilities of the stockholders existing thereunder, and the fund deposited with the treasurer of state as provided by law shall be held as security for the faithful discharge of the duties undertaken by such trust company."

The only specific provisions of the General Code with reference to the administration of such fund, are contained in §710-155 GC which provides that when such deposit of securities belongs to a foreign trust company the Common Pleas Court of the county in which the principal place of business of such trust company within the state is located, upon certain proceedings had may order the withdrawal of such funds and the treasurer of state is bound to recognize and comply with a certified copy of such order and turn over the securities. There are no provisions of the General Code defining the duties of the treasurer of state with reference to said fund, upon the liquidation of a bank, and there are no provisions authorizing the treasurer of state to administer said fund in the event of liquidation. On the other hand, under the provisions of §710-90, GC, the superintendent of banks is required upon taking possession of the business and property of any bank for liquidation, to forthwith post a notice on the doors of each office of the bank which notice shall state the date and the time of such posting and that all the business and property of such bank are in his hands; and to forthwith by written notice served personally or by registered mail or telegraph notify all correspondents and reserve banks and all other individuals, partnerships, corporations and associations known to him to be holding or in possession of any assets of such bank.

Sec 710-91, GC, among other things, provides that:

"Immediately upon the posting of the notice on the door or doors of a bank by the superintendent of banks, as provided in §710-90 GC, the possession of all assets and property of such bank of every kind and nature, wherever situated, shall be deemed to be transferred from such bank to, and assumed by the superintendent of banks; and such posting shall of itself, and without the execution or delivery of any instruments of conveyance, assignment, trans-

fer or endorsement, vest the title to all such assets and property in the superintendent of banks."

Sec 710-92, GC, provides that if the superintendent doubts the justice or validity of any claim, he may reject the same in whole or in part, or reject any claim of security preference or priority, or set-off; and further provides that a person, partnership, corporation or association who shall deem himself or itself aggrieved by the rejection of his or its claim in whole or in part, or the rejection of any claim of security preference or priority, or set-off, by the superintendent, shall bring an action against the superintendent of banks and such bank, within three months after such rejection or refusal of allowance, or be forever barred from asserting the same.

Sec 710-93 GC provides for the filing by the superintendent, of inventory of the assets of the bank, lists of claims, permanent records of liquidation and record of final distribution.

Sec 710-95 GC prescribes certain powers and duties of the superintendent of banks upon taking possession of a bank for liquidation and for the securing of instructions from the Common Pleas Court of the county as to the manner in which he should exercise his power and discretion.

Sec 710-97 GC provides for the payment of expenses of liquidation.

Sec 710-98 GC prescribes the method and manner of paying dividends.

Sec 710-98a GC makes certain provisions with reference to allowance of preferred claims.

Sec 710-99 GC provides for objections to claims and hearing by court thereon.

And these sections with other cognate sections provide means, formula and machinery convenient and adequate for the administration of, and the determination of the validity and priority of any claim against any asset of the bank.

It will be noted that under the provisions of §§710-150 and 710-161, GC, the treasurer of state is merely a custodian of the fund deposited by the trust company with him, and that neither of these sections nor any other provision of the code confer on him any power or duty with reference to the administration of such fund in the event of liquidation of the bank making such deposit, while under the other sections mentioned the power and duty is conferred on the superintendent to take possession of and administer all the assets of the bank when he has taken charge of the same for the purpose of liquidation, and that the

method and manner of allowance and rejection of claims against the bank is prescribed, together with the limit of time in which such action can be brought to secure the allowance of claims, and the method of bringing such action, and the court having jurisdiction thereof; and that the power of the superintendent to administer all of the assets is not limited in any way by any statutory authority conferred on the treasurer of state, or otherwise.

Reading these sections together, and taking into consideration the fact that the fund deposited with the treasurer of state is unquestionably an asset of the bank, it is clear that it was the legislative intent that upon the liquidation of a bank the superintendent should take possession of and administer the fund deposited by such bank with the treasurer of state; and that the mode and manner of administration thereof is exclusively governed by the provisions of the code relating to the administration of the assets of banks in process of liquidation, by the superintendent of banks. And upon taking possession of a banking corporation with trust powers for the purpose of liquidation it is the duty of the superintendent of banks, in order to facilitate the liquidation of such banking corporation, to forthwith cause such banking corporation to resign as fiduciary of the trusts of which it is trustee and to file final accounts of such trusts so that its liability as such trustee may be determined, and claims filed by its successor trustee or the beneficiaries of such trust therefor.

As the plaintiff has asserted a claim on said fund and as the unsecured creditors of said bank will be entitled to the proceeds thereof remaining after the payment of claims entitled to preferential payment out of said fund, it will be ordered that the treasurer of state forthwith pay over and deliver said fund to the superintendent of banks and that the superintendent of banks take possession thereof for administration by him as a part of the assets of said bank.

5. Under the provisions of §710-161, GC, above referred to, "the capital stock of such trust company, with the liabilities of the stockholders existing thereunder, and the fund deposited with the treasurer of state as provided by law shall be held as security for the faithful discharge of the duties undertaken by such trust company in respect to any trust," it will be noted that this section, in addition to providing that the fund deposited with the treasurer of state shall be held as security for the faithful discharge of the duties undertaken by such trust company, provides that the capital stock of such trust company, with the liabilities of stockholders existing thereunder, shall be held as security.

In view of the provisions of §3 of Article 13 of the Constitution, that "the stockholders of corporations authorized to receive money on deposit shall be held individually responsible, equally and ratably * * * for all contracts, debts and engagements of such corporations to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares", it appears that this statutory provision was not intended to and could not give claims against a banking corporation carrying on a trust business, arising out of the violation of its duties as fiduciary, preference over the claims of other creditors of the corporation, insofar as the capital stock of such trust company, with the liabilities of stockholders existing thereunder, is concerned, but was intended only to provide that claims against the trust company for violation of its duties as fiduciary, were not limited in recovery to said one hundred thousand dollar fund deposited as security, but were entitled, upon the exhaustion of such fund, to the payment of claims for such violations, to participate on an equality with unsecured claims against such corporation arising on other grounds. The fund of one hundred thousand dollars being established and held as security for the faithful discharge of the duties undertaken by such trust company in respect to any trust, it is clear that either the trustee or beneficiaries of a trust estate which has sustained a loss by reason of the failure of the trust company to faithfully discharge such duties, has the right to resort to such fund for indemnification against such loss.

"It might be supposed that the term 'breach of trust' was confined to willful and fraudulent acts which have a quasi criminal character, even if they have not been made actual crimes by statute. The term has, however, a broader and more technical meaning. It is well settled that every violation by a trustee of a duty which equity lays upon him, whether willful and fraudulent, or done through negligence, or arising through mere oversight or forgetfulness, is a breach of trust. The term therefore includes every omission or commission which violates in any manner either of the three great obligations * * * of carrying out the trust according to its terms, of care and diligence in protecting and investing

720

the trust property, and of using perfect good faith. This broad conception of breach of trust, and the liability created thereby, are not confined to trustees regularly and legally appointed; they extend to all persons who are acting trustees, or who intermeddle with trust property."

Pomeroy's Equity Jurisprudence, Fourth Edition, Volume 3, pages 2479 and 2480.

"In addition to this claim of the beneficiary upon the trust estate as long as it exists, the trustee incurs a personal liability for a breach of trust by way of compensation or indemnification, which the beneficiary may enforce at his election, and which becomes his only remedy whenever the trust property has been lost or put beyond his reach by the trustee's wrongful act."

Pomeroy's Equity Jurisprudence, Fourth Edition, Volume 3, pages 2481 and 2482.

The admission by the parties, hereinbefore referred to, that the order of the Probate Court directed said banking corporation trustee to account for and pay over to the plaintiff as successor trustee, all the assets and property belonging to said trust estate and that the final account filed by the trustee pursuant to said order showed its refusal to pay over and distribute to plaintiff as trustee, the sum of $2580.94 constituting a part of such assets and consisting of the items of deposit hereinbefore referred to, is sufficient, without resort to other evidence in the case, to establish misfeasance and violation of fiduciary duty on the part of the trustee as it is a primary duty of a trustee, on order of court having jurisdiction of the trust estate, to account to and pay over to its successor trustee, the assets and property of said trust estate, and such misfeasance and violation of such duty on the part of the trustee entitled the plaintiff as successor trustee, to resort to the fund deposited with the treasurer of state for compensation and indemnification for the amount due it on such accounting which the accounting trustee has failed to pay. Furthermore, the evidence shows that the deposits of such trust funds in the instant case were made contrary to the provisions of the will directing that such deposits should not be made, and such actions on the part of the trust company constituted misfeasance and violation of fiduciary duty on its part which entitled the plaintiff to resort to such fund for indemnification for the amount thereof. A lien will therefore be impressed on such security fund for the total amount of such deposits, as shown by the evidence, to-wit, the sum of $2521.50.

As this fund of one hundred thousand dollars constructively came into the possession of the superintendent of banks at the time he took possession of said bank for the purpose of liquidation, and the order of the Probate Court and the accounting was not made until after the superintendent took possession, this lien, for the reasons mentioned in **Fuller v Baker, 128 Oh St 226** will not bear interest; and as there are other claims for liens asserted against such fund similar in character to the lien impressed by plaintiff, the lien impressed on such fund for plaintiff will be on a parity with other similar liens which may hereafter be impressed on such fund and will not be payable until all the liens against such fund have been determined, and if the plaintiff's claim secured by said lien is not fully satisfied out of said fund, such deficiency, for the reasons hereinbefore mentioned, will constitute a general claim against said corporation on a parity with the unsecured claims against it.

Decree will therefore be entered for the plaintiff and against defendants, in accordance with the conclusions hereinbefore set forth.

CROW, PJ, and KLINGER, J, concur.