**BINDER, ESTATE OF, In Re**

Ohio Common Pleas, Cuyahoga Co

No 461429. Decided Nov 29, 1937

Orgill, Maschke & Wickham, Cleveland, by Louis W. Wickham, and I. R. Winsper, Cleveland, for exceptors, Nellie Emsley and Gordon B. Emsley.

Herbert S. Duffy, Attorney General, Columbus, Hugh A. McNamee, Special Counsel, Cleveland, Ulmer, Berne & Gordon, Assistant Special Counsel, Cleveland, by C. R. Berne and J. M. Berne, on behalf of The Guardian Trust Company and S. H. Squire, Supt. of Banks of Ohio in charge of the liquidation of The Guardian Trust Company.

## OPINION

By DEMPSEY, J.

Three of the briefs filed did not reach me until Friday afternoon; I have had no occasion to read them except at home over the week-end—I was busy Friday and Saturday, so I have not had an opportunity, yesterday being Sunday, to dictate any memorandum—I prepared some notes at home on my reactions.

This question of jurisdiction is a very important one and it should be settled definitely as expeditiously as possible, because of the fact I understand that there are several of these cases that are being appealed from the Probate Court and if the court were to hear all of them and spend weeks and perhaps months in doing so, and then the reviewing courts would decide that the Probate Court had no jurisdiction, it would be a waste of time, so in the interests of economy it seems, this apparently being a test case, that it should be decided by the Court of Appeals at least before the trial of other cases is undertaken. Of course, it is immaterial what the trial court's opinion may be, because the Court of Appeals will have the last word, and nobody in this room can prognosticate what the reviewing courts are going to say about the question in view of the obiter dictum opinions expressed in other cases. However, this matter has been presented in a fashion which is different from that in which it has been presented in any of the other cases which have been cited; the opinions expressed in these other cases are not in point with the question as raised here, and on final analysis the question to be decided is whether or not in view of the provisions in the Constitution and the General Code, the jurisdiction of the Probate Court, if it has jurisdiction, is an exception to the general rule, as expressed by the reviewing courts, to the extent that an opinion has been rendered that the Common Pleas Court has sole jurisdiction to pass upon these controversies between the Superintendent of Banks and the claimants.

In this case, it appears that The Guard-

ian Trust Company resigned as trustee of the estate of Henry Binder, deceased, on April 21, 1933, and that same day L. R. Winsper was appointed successor trustee —I might ask, was that appointment made by Common Pleas Court?

MR. WINSPER: Probate Court.

THE COURT: Probate Court. On May 8. 1933, a final account was filed by the conservator. This account was approved June 5, 1933, ten days before the bank was closed and the liquidator took charge. On June 15th the Superintendent of Banks took possession. On June 17th, two days after, Gordon B. Emsley filed his exceptions to the final account and asked that the account be reopened. On November 17th, Nellie Emsley filed her exceptions and joined in the application that the account be reopened.

A year later, November 19, 1934, both exceptors filed an application to open the fifth, sixth and seventh partial accounts filed by The Guardian Trust Company. Upon hearing in the Probate Court, the applications were granted, the exceptions were sustained, and relief was granted.

It is claimed by the Superintendent of Banks that the Probate Court was without jurisdiction after June 15, 1933, because of the provisions of the Banking Act. The successor trustee maintains that the Probate Court has sole jurisdiction under the Constitution and the Probate Code. This involves a consideration of the provisions of the Constitution of Ohio with reference to the creation and the jurisdiction of courts insofar as the people in the Constitution have assumed jurisdiction over that subject. Article IV of the Constitution provides that the judicial power of the state shall be vested in the Supreme Court, Courts of Appeals, Probate Courts, Common Pleas Courts, and then the significant provision "such other courts as may, from time to time be created by law with jurisdiction inferior to the Court of Appeals." It is by authority of that provision that these special courts have been created from time to time—the old Superior Court of Cincinnati, the Superior Court of Cleveland, Insolvency Courts, Juvenile Courts, and Municipal Courts. The Supreme Court from time to time has had occasion to pass upon the jurisdiction of those courts and the powers of the Legislature under the Constitution, and while I have not had time to review them now, I have had occasion before. The net result of the decisions of the Supreme Court, particularly when the Municipal Court of Cleveland,

which was the first Municipal Court in Ohio, was attacked as to powers and jurisdiction, was that under this provision of the Constitution granting the power to the Legislature to create special courts, any kind of a trial court could be created and given all the power and the jurisdiction now conferred upon other trial courts, Common Pleas Courts, Probate Courts, so long as that jurisdiction and those powers do not encroach upon the powers and jurisdiction of the Court of Appeals. So that it is not intended by the Constitution itself to give exclusive jurisdiction to the Probate Court in probate and testamentary matters. For instance, the Supreme Court is given original jurisdiction of certain extraordinary remedies—that of procedendo, quo warranto, prohibition, mandamus, habeas corpus, but there is nothing said in the Constitution that the jurisdiction is exclusive and it has been so recognized because the Court of Appeals was given similar original jurisdiction, and the Legislature recognized the principle that that language did not give exclusive jurisdiction to the Supreme Court, and the Legislature has conferred jurisdiction upon the Court of Common Pleas in some of those extraordinary remedies.

It is interesting to note that the only court whose jurisdiction is fixed entirely by the Constitution is that of the Court of Appeals. The Supreme Court's jurisdiction is fixed with the proviso that it may be given additional jurisdiction by the Legislature in appeals from the decisions and acts of administrative officers; with that exception, the jurisdiction of the Supreme Court is entirely fixed by the Constitution. The jurisdiction of the Common Pleas Court is left entirely to the Legislature—there is a limitation which would forbid doing away with Common Pleas Courts entirely by the provision that it requires one Common Pleas Court in each county of the state. The jurisdiction of the Probate Court is fixed partly by the Constitution and the rest left to the Legislature. So that the Constitution itself does not grant exclusive jurisdiction to the Probate Court insofar as probate and testamentary maters are concerned. However, the Legislature has seen fit to give it exclusive jurisdiction in those matters. That is conferred by the provisions of §10501-53 GC, that recites that the Probate Court has power to direct and control the conduct of fiduciaries and settle their accounts, and provides that such jurisdic-

tion shall be exclusive unless otherwise provided by law, and there is the catch.

This section also gives to the Probate Court plenary power at law and in equity fully to dispose of any matter properly before the court, unless the power is expressly otherwise limited or denied by statute.

The question here, therefore, is whether or not these powers and the duty to pass upon final accounts have been taken away from the Probate Court by virtue of the provisions of the Banking Act insofar as final accounts of defunct banks are concerned. §10506-40 GC provides that the decision of the Probate Court on the settlement of an account shall have the same force and effect as a judgment at law or a decree in equity. It is difficult to reconcile this provision with the decision in the case of Burton v Grief, 11 Oh Ap 102. Upon investigation, the court has found that that decision was rendered before the present Probate Code was adopted by the Legislature.

The Code also provides for the filing of accounts by testamentary trustees and requires the Probate Court to pass upon such accounts. The court has the power and the duty to disapprove any account of a trustee upon its own motion, if it appears that there is any violation of law or other irregularity. One reason, not the least in importance, is the fixing or disallowance of compensation. The law does not permit the filing of accounts of fiduciaries in any court other than the Probate Court, and certainly no other court can approve or disapprove them except upon appeal. With reference to the reopening of final accounts, as in this case, the Code provides that they may be reopened within eight months by a party not having notice of the hearing, and in considering a final account, any partial account may be reopened because of mistake or fraud.

Now, it is interesting to note that under §710-92 GC, the Common Pleas Court is not mentioned. In substance, the effect of that section is that anybody who feels aggreived by the rejection of a claim on the part of the Superintendent of Banks may bring an action, but that section does not expressly provide that the action shall be brought in the Court of Common Pleas, and in considering the possibilities and contingencies that might arise, we find that the question may be raised in some of these matters as to whether or not the Court of Common Pleas would have jurisdiction. By way of illustration, suppose that one of these estates, or one of the assets of an estate of some rich man might consist of a boat operated upon the navigable waters of the United States—it might be a pleasure launch, it might be a commercial boat of some kind, but supposing somebody had a claim under the Admiralty Rules—take an ordinary case in which the claimant was a seaman, which does not come under the Seaman's Act—incidentally, the Court of Common Pleas does have jurisdiction under the Seaman's Act concurrent with the jurisdiction of the Federal Court—supposing an ordinary claim arose under the Admiralty Rules which have been adopted by the Supreme Court of the United States pursuant to custom existing from time immemorial and similar to the common law. A seaman who is injured in the course of his employment has a right to assert a claim for care, maintenance and cure. It has been held that this is an action which is exclusively within the jurisdiction of the equity branch of the United States District Courts, or where diversity of citizenship and all the requirements as to jurisdiction exists, the question might arise as to whether or not a citizen of New York, for instance. would be required to file his suit in the Common Pleas Court, or it might be a claim for less than $100.00 over which the Common Pleas Court wouldn't have jurisdiction However, on the other side of that issue it might well be argued that the intention of the Legislature was to create equity jurisdiction and supervision over the Superintendent of Banks, and perhaps say to him, in view of the justice of the claim of the seaman, for example, that you must allow that claim, and place it upon a different basis than the ordinary action at law or in equity, which would be an original action against a particular defendant. But that bridge, of course, can't be crossed until we get to it, and I am simply citing it as an illustration of the questions that might arise if that section of the General Code is construed to give exclusive jurisdiction to the Court of Common Pleas in all actions against the Superintendent of Banks. Of course, it was the intention of the Legislature, despite the fact that the Common Pleas Court is not mentioned in §710-92 GC, to centralize the liquidation as much as possible. Attention has been called to the fact that the Superintendent is required to go into other jurisdictions to defend other exceptions in Probate Courts. The answer to that, is that if the defunct corporate trustee saw fit to accept testamentary trusteeships in other jurisdictions, the final account must be passed upon by

the Probate Court of that jurisdiction, as no other court has been given such jurisdiction by the Constitution or the Legislature.

Now, in giving the Probate Court jurisdiction in probate and testamentary matters, the word "testamentary" is employed in the Constitution in its broad sense, as pronounced by the Supreme Court of Ohio in the case of **Fidelity & Deposit Company v Wolfe, 100 Oh St 332.** A trust created by last will and testament is as much a testamentary subject as the administration of the estate by the executor. In the court's opinion, it would have been unnecessary to mention settlement of accounts in the Constitution, as that is one of the most pertinent, material and important matters connected with testamentary matters; the Constitution having conferred testamentary jurisdiction upon the Probate Court, the Legislature is without power to take it away, although, as pointed out, it might confer concurrent jurisdiction upon some other tribunal.

If the cestui que trust or a successor trustee sees fit, as in this case, to file his claim for damages with the liquidator, and then bring an action for such damages, upon rejection, the Common Pleas Court has jurisdiction under the Banking Code but the claimant also has the right to except within the statutory period of limitation to the account in the Probate Court, and the jurisdiction of the Probate Court has not been taken away by the Banking Code.

The provisions of §710-91 GC do not apply to final accounts filed in Probate Court as to the determination of which, as indicated, that court has exclusive jurisdiction. The question arises then as to whether or not, if the Probate Court has passed upon the exceptions and decided in favor of the exceptors, it has the plenary power, as provided in the Probate Code, to grant relief. Of course, if it has gone to all the trouble to hear the evidence upon the exceptions as to whether or not the account should be approved—as to whether or not there are any illegal investments or violations of the rule of uberrima fides, and having determined that in favor of the exceptors, nothing would be left to be done except grant the relief, and then the decision of the Probate Court can be appealed to the Court of Common Pleas. If the Court of Common Pleas should acquire jurisdiction, as was the situation in the case of **Huntington National Bank v Ful-**

ton, 49 Oh Ap 268 (17 Abs 711), the Probate Court would have to defer to the decision of the Court of Common Pleas in settling the account—in other words, the decision of the Common Pleas Court in the action for damages. If the Common Pleas Court acquired jurisdiction and determined the question, determined the issue as to whether or not there was any violation of the rule of uberrima fides, any illegal investments, or any other question that might be a proper exception to an account—the Common Pleas Court having decided that issue, the Probate Court would be bound to follow it upon passing on exceptions, because if for no other reason, the decision of the Probate Court could be appealed to the Court of Common Pleas. The decision of our Court of Appeals in the case of **Fulton v Kabaker, in 1 Ohio Opinions 326 (18 Abs 663)** is not in point for the reason that the Municipal Court had no jurisdiction of the subject-matter. The nature of these actions brought in Common Pleas Court against the Superintendent of Banks are in the nature of equity actions—it might be said from one viewpoint, that they are appeals from the decision of the Superintendent of Banks on the other hand, they are akin to mandamus because the court is asked to require the Superintendent of Banks to allow a claim and to determine the nature of the claim and the extent of the damage, if any. As a matter of fact, the jurisdictional bugaboo in this case is more apparent than real, for the reason that under either procedure, the matter is finally passed upon by the Court of Common Pleas and each side has the right of review by the Court of Appeals; in other words, in this case the claimant has proceeded in both fashions; that is to say, the claimant filed with the liquidator an action here pending in this court, against the Superintendent of Banks; he also took his exceptions, had them heard in the Probate Court, and the case is here on appeal from the decision of the Probate Court. If this court were to grant the motion to dismiss on the grounds the court is without jurisdiction, the case would have to be immediately heard upon the same issues, with the exception of the jurisdictional question, in the case that is pending in the Court of Common Pleas, so that the question is more or less moot so far as this case is concerned, because the same issues are involved and I assume if this case were heard here on the appeal, and the facts are the same as would appear in the case that is pend-

ing in this court, and if the reviewing court should determine that this court had no jurisdiction upon appeal because the Probate Court had no jurisdiction, I take it the parties would retry the case upon the evidence in the Common Pleas Court,—upon the record and save that additional time and expense—that is, the record in the appeal case, so that so far as the merits of this case are concerned, it is in the Common Pleas Court now; it is immaterial whether it is tried upon appeal or upon the action pending here.

Now, it is apparent to the court that in enacting the Banking Act, the Legislature had particularly in mind the problems of savings banks for the reason that nothing is said in the Banking Act about the powers or the duty of the Superintendent of Banks with reference to trusts of which the closed bank was trustee. That has been the subject-matter of litigation as to whether or not the Superintendent of Banks could continue to execute the trust and it has been held by the Probate Court, at least, and also held by this court, that it is his duty to surrender the trust when there is a successor trustee appointed; if one had not already been appointed, to simply hold the assets and conserve them as a receiver would do, until they could be turned over to a successor trustee. You will find in many of these cases the Superintendent of Banks has filed the final account, as in the Rose case, where notice after notice was sent before the account was filed, and it had been the custom of these corporate trustees to deduct their compensation, which they had no right to do; by custom, the Probate Court in the old days, when we were in the heyday of prosperity, allowed that compensation as fixed by the trustee, five per cent had been the customary allowance and was simply deducted, and, so, of course, the Superintendent of Banks in filing these final accounts, was interested in that amount of compensation, in big estates it amounted to a substantial sum, but in the Rose case no compensation was allowed for anything that was done after June 15, 1933, except to the extent of any expense that might be incurred in the reasonable preservation of the assets.

The claimants who filed their exceptions to final accounts in the Probate Court had the right to rely upon the ▮▮▮▮▮▮ ▮ provisions of §10506-40 GC and to assume that the settlement of the final account by the Probate Court would be res adjudicata unless

the judgment of that court was appealed and it would be a matter of great injustice if they chose that remedy and suddenly awakened to learn that a court so construed these various statutes and the Constitution to the effect that the unrepealed or unamended sections of the Probate Code conferred exclusive jurisdiction upon the Probate Court and meant nothing as against a closed bank, and that they have no right to have their claims passed upon by a court of justice because as in the Rose case, of the short period of limitation against the filing of claims with the Superintendent and subsequent action in the Court of Common Pleas, if the claim is rejected. It is not the province of a court of equity to adopt a narrow or restricted construction which will defeat the right of a party upon a mere technicality and not upon the merits.

Litigation, at best, is expensive, and an inconvenience, and the Superintendent of Banks cannot hope to escape these features completely, but, as stated, whenever possible, they are to be avoided, and such litigation is to be concentrated in the Court of Common Pleas as much as possible, under a reasonable construction of the Banking Code.

Now, the court's ruling on this subject of the jurisdiction is not to be construed as any criticism of the attorneys for the Superintendent for raising the question; on the contrary, they are to be commended for the thorough and efficient manner in which the issue has been presented. After all, the Superintendent of Banks is a public official, a state officer; he has no personal interest in these matters, but he is interested in making distribution according to law, and seeing that the interests of unrepresented depositors are protected. Having done that to the best of his ability, he has faithfully performed his duty.

The court finds that the filing of accounts by fiduciaries is indispensible under testamentary law; that the ▮▮▮▮▮▮ ▮ Probate Court is the only tribunal vested with authority under the Constitution and the General Code to receive and settle such accounts, and that nothing contained in the Banking Code has deprived the court of this jurisdiction, and incidentally, the plenary power conferred by §10501-53 GC.

For the reasons assigned, the motion to dismiss for want of jurisdiction is overruled, and exceptions will be noted.